# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

JOY LYNETTE OWENS,

     Plaintiff,

vs.                           CASE NO. CV-12-J-2006-NE

JACKSON COUNTY BOARD OF
EDUCATION, and
KENNETH HARDING,

     Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendants' motion for summary judgment (doc. 34), brief in support of said motion (doc. 35) and evidentiary submissions( doc. 36), to which the plaintiff filed an opposition and further evidence (docs. 41-43).  The defendants thereafter filed a reply (doc. 44).  The court has considered the motions, evidence and arguments submitted by the parties in support of their respective positions.

## I.  FACTUAL BACKGROUND

By amended complaint the plaintiff alleges the defendants discriminated and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq,* and 42 U.S.C. § 1983.  The plaintiff asserts that she

has applied, and been passed over, for multiple promotions because she is a female and because she previously engaged in protected activity.

The plaintiff began working for defendant Jackson County Board of Education in 1988 as a kindergarten teacher.  Plaintiff depo. at 18.  She is currently a fifth and sixth grade language arts teacher at Rosalie Elementary.  *Id.* at 34, 36.  She has also served as a basketball and softball coach throughout her tenure.  *Id.* at 22-25.  Because Rosalie Elementary does not have an Assistant Principal, she has often filled that role.  Plaintiff declaration (plaintiff ex. 81), ¶ 3.

Defendant Harding is the superintendent.   He makes hiring and firing recommendations to the defendant Board of Education.  Harding depo. at 25-26.  The Board can either accept or reject his recommendations.  *Id.* at 39-40.

Defendant Harding uses a committee system to conduct interviews for supervisory positions, so that he interviews a candidate and the committee interviews the same candidate immediately thereafter.  Harding depo. at 51-52.  The committee then makes a recommendation to Harding and he makes that recommendation to the Board.  *Id.* at 52.  He chooses the committees by who he knows in each community or relying on someone he knows if he does not know people in a particular community.  *Id.* at 52-53.   He destroys his notes and vote counts when a position is filled.  *Id.* at 70-71.

Although the defendants allege the committee system is evidence that there is no discrimination in the selection process for various vacancies, the defendant School Board members' depositions contradict that assertion. John Lyda was elected to the School Board in 2010. Lyda depo. at 28. He believes the policies implemented by Mr. Harding do not afford every applicant the same opportunity because there is "preselection" taking place. *Id.* at 13, 38-39. Lyda has heard from multiple people that the committees are "stacked" in order to hire the person Harding wants, but he does not think this is true. *Id.* at 54-55. He also believed that committee decisions presented to the Board as "unanimous" were not, and knew that the Superintendent "has got to be the one that makes the final call, regardless of what the committee says." *Id.*, at 14-15. Lyda has recommended that the hiring policies and interview process be changed. *Id.* at 37-38. Mr. Harding was not receptive to changing any policies. Lyda depo. at 38; Grant depo. at 48.

Dana Moore served as president of the School Board of Education. Moore depo. at 12. He was previously Director of the Technical School in Jackson County, before that was the Child Nutrition Supervisor, and prior to that was a principal at Bryant Elementary. *Id.* at 14-16. Mr. Moore testified there has been discussion that Jackson County does not hire the most qualified individuals and does not follow its own procedure. *Id.* at 53, 58. He personally has criticized the committee system and

the selection of the committees.  *Id.* at 54.  To be unbiased, the committee should be picked by someone other than Harding as the superintendent.  *Id.*, at 54-56, 63-64. The Board has discussed the need for a new hiring policy.  *Id*., at 63.

In filling assistant principal positions, Harding stated he usually talks with the principal about the applicants but he does not sit in on the interviews and accepts the recommendations of the principals in filling these positions.  Harding depo. at 77-78.

### A.  Jobs applied for predating plaintiff's first EEOC charge

**Principal at Rosalie Elementary School** (May 2010):  Plaintiff states she is not bringing a claim for this position and further notes that the position was filled by a female.  Plaintiff depo. at 37-38.  According to plaintiff, a male was supposed to be hired for this position until State Senator Lowell Barron asked defendant Harding to hire Rhonda Wheeler as principal for Rosalie Elementary.  *Id* at 60.  See also Harding depo. at 136.  Cecil Grant, who has been on the Jackson County Board of Education since November 2010, also heard from Harding that Senator Barron asked that Rhonda Wheeler be placed in that position.  Grant depo. at 11-12. Defendants provided the affidavit of Wesley Barrentine (defendant exhibit 103) as evidence of why plaintiff was not selected for this position.  The affidavit contradicts the testimony that pressure from Lowell Barron caused Ms. Wheeler to be selected as principal of Rosalie Elementary.

4

**Principal at Skyline High School** (May 2010):  A male, Kevin Dukes, with less experience than plaintiff as a teacher, but who had been an assistant principal for one year, was placed into this position.  Plaintiff depo. at 72-73, plaintiff ex. 27.  Kevin Dukes was transferred from assistant principal at North Jackson High School to principal at Skyline High School.  Harding depo. at 141.  Mr. Dukes' highest certificate is a Class AA, received in 2007.  Harding depo. at 142.  Gant heard that Dukes was given this job because he was close to Harding, and not because of his skill or professionalism.  Gant depo. at 34.

**Assistant Principal at North Jackson High School** (June 2010): After applying for this position, the plaintiff called to set up an interview with the principal, Sam Houston, but Mr. Houston would not speak with her.  Plaintiff depo. at 74-75.  According to Houston, the plaintiff never contacted him, so she did not get interviewed.[1]  Houston depo. at 23.  A male, Doug Haynes, filled this position.  Plaintiff depo. at 74-75; Houston depo. at 19.  Mr. Haynes had less experience than plaintiff and only possessed a Masters degree in Administration, whereas she holds a Educational Specialist in Administration ("Ed.S.").[2]  Plaintiff depo. at 76-77, *see*

---

[1]Mr. Houston suggested he interviewed everyone who contacted him, and the plaintiff simply did not contact him.  Houston depo. at 23.  He ended up interviewing Doug Haynes, Scotty Overdear, and Shawn Phillips.  Id., at 25.

[2]According to Harding, an Ed.S. is an AA level certification, ranking it above an A certification.  Harding depo. at 103-104.

*also* plaintiff ex. 35.   Haynes received a Class A certificate in educational administration in 2008.   Harding depo. at 157.   Haynes was a teacher at North Jackson High School prior to his promotion.   Plaintiff ex. 37; Houston depo. at 26. The plaintiff also alleges she had more experience teaching professional development courses than Haynes and that she was in charge of the state mandated school improvement plan at Rosalie.   Plaintiff depo. at 77.

**Assistant Principal at Pisgah (**two positions – June 2010**):**   Both of these positions were filled by men.   Plaintiff depo. at 80.   Billy Glen Shelton, who received one position, was a classroom teacher at Pisgah High School and Gene Roberts, hired for the other one, was a Physical Education teacher at Rosalie Elementary.   Plaintiff depo. at 80. *See also* plaintiff ex. 40; Guffey depo. at 22-23; Roberts depo. at 14-15.  The plaintiff interviewed with the principal, Mark Guffey.   Plaintiff depo. at 82-83. Guffey told her that one of the positions would be filled by Roberts and he had no say over that one.   *Id.,* at 83.   The plaintiff had more years of classroom experience than Shelton and a higher degree.[3]   *Id.,* at 86-87.   She also held a higher degree than

---

[3]Mr. Shelton's highest certification is a Class A, as Educational Administrator, Grades P-12.  Plaintiff ex. 38; Harding depo. at 168-169.  According to Guffey, he selected Shelton because Shelton was already teaching at Pisgah and therefore knew strategic teaching and tiered instruction.  Guffey depo. at 26.  Shelton had no prior administrative experience.  Harding depo. at 169.

Roberts.[4]  Plaintiff depo. at 87.  According to Guffey, he had a fractional position for which Mr. Harding both offered to fill it and to fill it with Mr. Roberts.  Guffey depo. at 30-32, 37-38.  Harding explained there was a ½ unit Physical Education position so he created another ½ unit assistant principal position "because we could."  Harding depo. at 165-166.  Cecil Gant stated that Harding placed Roberts at Pisgah as an assistant principal without Board approval.  Gant depo. at 32-33.

After Mr. Roberts was hired as the interim principal at Section, no one has filled this fractional position again.  Guffey depo. at 39-40; Harding depo. at 164.

**B.  *Jobs applied for and covered by plaintiff's July 2011 EEOC Charge***

**Section High School Principal and Assistant Principal** (May 2011):  The plaintiff was not given an interview for the assistant principal job and a male, Steve Durham, who had been principal, was placed in the assistant principal role.  Plaintiff depo. at 90; plaintiff ex. 11.  Durham holds at least a Class A certification (Master's level).[5]  Harding depo. at 103.

---

[4]Evidence reflects that the plaintiff holds a Class AA certification as an educational administrator, Grades P-12, received August 26, 2004.  Plaintiff ex. 15.  Plaintiff's other certifications all involve grades P-6 or lower.  *Id.*  From 1988 until 2007, she taught kindergarten, except for two years as a 3rd grade teacher.  Plaintiff ex. 15 at JCBOE 000224.  Since 2008, plaintiff has taught 5th to 6th grade language arts.  *Id.*

[5]The evidence reflects that Mr. Durham does hold a Class AA certification, as Principal, Grades P-12, issued on September 18, 1987.  Plaintiff ex. 9.

7

When asked about whether going from a principal to an assistant principal would be a classification change rather than a transfer, Harding testified that Durham was never actually placed in the assistant principal position, but rather was transferred as principal of Section High School directly to principal of Stevenson Elementary. Harding depo. 83-87.  However, June 2011 Board minutes reflect Durham was transferred from principal to assistant principal at Section High School, and Board minutes from July 2011 reflect Durham was transferred from assistant principal at Section High School to principal at Stevenson Elementary, effective August 29, 2011. Plaintiff ex. 4; Harding depo. at 88-89, 106.  Harding thus clarified that Durham was actually placed in the assistant principal position until the principal at Stevenson (Dr. Allen, a female) retired.  Harding depo. at 92.  According to John Lyda, Durham was demoted due to poor performance as principal at Section High School.  Lyda depo. at 30.  In fact, Mr. Lyda objected to Durham being given another principal position, but Harding stated Durham should be given another chance because he had previously been a successful elementary principal.  Lyda depo. at 31.

The plaintiff interviewed for the Section High School principal position along with Christy Bell and Gene Roberts.[6]  Plaintiff depo. at 96; Harding depo. at 110.

---

[6]Defendants provided the affidavit of Deborah Cordell (defendants exhibit 106) as someone who served on "a committee to assist in selecting a principal for Section K-12 School." Affidavit of Cordell, at 1.  However, Ms. Cordell does not specify whom the committee selected.

8

Gene Roberts was hired for the principal job at the same time Durham was made assistant principal.[7]  Plaintiff depo. at 90; plaintiff exs. 5, 8.  Roberts had no prior administrative experience, other than serving as interim principal for two months while Durham was having a hip replacement.[8]  Harding depo. at 105-110.  Harding informed Roberts that Durham would be his assistant principal.  Roberts depo. at 38; Harding depo. at 101-102.  Roberts was a part-time assistant principal at Pisgah immediately before his appointment as interim principal at Section.  Harding depo. at 122-124; plaintiff exs. 7, 8, 17.  Roberts' highest certifications are a Class A in Driver and Traffic Safety Education, and a Class A in Educational Administration. Plaintiff ex. 18.  According to Roberts, before working at Rosalie for eight years, he was assistant principal and  driver's education teacher for three years while at Woodville.  Roberts depo. at 18.

Because the Stevenson Elementary principal position then came open and Durham was transferred to that position, Roberts was then allowed to pick his own assistant principal.  Harding depo. at 63.  Harding was involved in selecting who was

---

[7]Other evidence reflects that Roberts chose Durham as his assistant principal after he was appointed principal.  *See e.g*, plaintiff ex. 14.

[8]According to Roberts, while he was at Pisgah, Harding contacted him and asked if he would be interesting in filling in as Principal at Section while Durham had hip replacement surgery.  Roberts depo. at 32.

interviewed for the assistant principal position and asserted that everyone who applied for the position was interviewed.  Harding depo. at 96.

### C. Jobs applied for and covered by Plaintiff's second EEOC Charge, August 2011, including claim of retaliation

**Stevenson Elementary Principal** (July 2011):  The plaintiff was not interviewed and Steve Durham was given the job.  Plaintiff depo. at 99.  Because this position post-dates plaintiff's first EEOC charge, she believes she did not get an interview in retaliation for her charge.  *Id*., at 105.  According to Harding, because Durham was transferred into the Stevenson Elementary Principal position from Section High School, he did not conduct interviews.  Harding depo. at 54.  Durham was just a poor fit at the high school because he was not a strong enough disciplinarian, so he needed to move him.  Harding depo. at 56-57.  No committee was formed for this principal opening because Harding had already decided to place Durham in that job.  Gant depo. at 22-23.

**Section High School, Assistant Principal** (August 2011): Because Durham was moved to Stevenson, the assistant principal position at Section High School was again available.  The plaintiff did not get an interview.  Plaintiff depo. at 109.  Scotty Overdear was hired for this position.  Plaintiff ex. 44.  Mr. Overdear holds an AA certification as Educational Administrator, Grades P-12.  Plaintiff ex. 45.  He had no

administrative experience.   Harding depo. at 173.   Roberts testified that he

interviewed people for the assistant principal position but he does not remember who

besides Mr. Overdear, who was hired, and Ms. Owens, were interviewed.   Roberts

depo. at 41-42.  He took notes, and had interview questions, but he has shredded all

of this, as well as deleted the computer file he made when he typed the interview

questions.  Roberts depo. at 42-44.  Roberts chose Overdear because he seemed like

he was a good disciplinarian.  *Id.*, at 45.  Harding was involved in this decision.

Harding depo. at 175.

### D.  Jobs post-dating plaintiff's August 2011 EEOC Charge:

**Technical School Director** (September 2011):  The plaintiff applied for but

did not receive an interview for this position. Plaintiff depo. at 121.  Shane Small was

hired to fill this job.  *Id*.  According to plaintiff, Mr. Small has a lower degree than

she does.  *Id*., at 122. Mr. Small had previously been the Alternative School principal.

Plaintiff ex. 49.   The Board discussed that Mr. Small was not qualified to be the

Technical School Director.  Moore depo. at 78; Gant depo. at 39, 41.  Small was the

only person interviewed for this position.   Harding depo. at 178, 182.   Harding

represented to the Board that Mr. Small was being placed in this position on an

interim basis, although he later became the permanent director.  Gant depo. at 41-42.

He also continues to serve as the alternative school principal as well.  Harding depo. at 179-180.

**Special Education Coordinator** (December 2011): The plaintiff applied for but did not receive an interview for this position, which was filled by a male. Plaintiff depo. at 127, 128.  Harding interviewed only Kip Williamson for this job. Harding depo. at 192, 194.  Williamson was then recommended to the Board but the Board would not hire him.[9]  Plaintiff depo. at 128.  Robert Downey thereafter filled the position.  Plaintiff depo. at 129.  Harding then interviewed only Robert Downey. Harding depo. at 192, 195.  He holds an AA certification for principal and a Class A certification in special education, which Harding interpreted as meeting the job requirement of five years in special education.  Harding depo. at 203-204.  The plaintiff does not have a certificate in special education, but stated she worked with special education children for 25 years, including writing their IEPs.  Plaintiff depo. at 130.  John Lyda had concerns over the job description for this position being changed to no longer require a Master's in Administration.  Lyda depo. at 35-36.

---

[9]Mr. Williamson's only position with defendant has been as Transportation Coordinator. Plaintiff ex. 82 at exhibits 7 and 8.  According to John Lyda, the Board had issues with the procedure used by Harding to make this selection, not issues with Mr. Williamson himself.  Lyda depo. at 27, 33.  *See also* depo. of Dana Moore at 27-28.  However, Gant stated that when Williamson was presented to the Board for approval, the Board felt there were other individuals with more experience who were being overlooked, so the Board voted down Harding's recommendation.  Gant depo. at 23-24.

Lyda and Moore had concerns over Harding changing job descriptions to fit particular people he wanted in those positions.  Lyda depo. at 35; Moore depo. at 29-30.

**Transportation Supervisor** (December 2011):  The plaintiff applied for but was not interviewed for this position.  Plaintiff depo. at 133.  John Kirby was hired to fill the job.  Plaintiff depo. at 135.  Mr. Kirby was previously principal of Pisgah High School and then Dutton Elementary School.[10]  Plaintiff ex. 58.  His highest certification is a Class A.  Plaintiff ex. 58.   Because a job requirement was a CDL, Harding made arrangements for Kirby to get his CDL three days prior to the date he was hired.  Plaintiff depo. at 135-136; Harding depo. at 212.   A Jackson County Board of Education employee, Sharon Caperton, was asked to train Mr. Kirby for his CDL test.  Moore depo. at 99-100; Harding depo. at 214-215.

Harding alleged he only interviewed those who met either the administrative experience requirement or the CDL requirement, and agreed Kirby did not have his CDL when he interviewed for this job.  Harding depo. at 207, 211.  Harding recommended Kirby be hired, then helped him obtain his CDL.  Harding depo. at 213-214.  The plaintiff had a CDL certification in the past, and could have renewed it.  Plaintiff depo. at 138.  The School Board members discussed their concerns over

---

[10]While Mr. Kirby was principal at Dutton, Lyda received phone calls from parents of Dutton students complaining about Mr. Kirby's performance.  Lyda depo. at 43-44.  Lyda addressed these complaints with Harding, who stated he had heard no complaints about Kirby. *Id.*, at 44.

allowing Mr. Kirby to be hired or being told he would be hired, although he did not meet the requirements.  Lyda depo. at 41; Gant depo. at 25.  According to Moore, consideration of the job applicants was delayed and then Mr. Kirby obtained his CDL before the Board met again.  Moore depo. at 69-72.  According to Gant, this was to allow time for Kirby to get his CDL.  Gant depo. at 26.  According to Gant, Kirby did not know what he was doing as a principal and does not know what he is doing in the transportation job.  Gant depo. at 26-27.

**Bridgeport Elementary School Principal** (February 2012):  Plaintiff applied for and received an interview for this position.  Plaintiff depo. at 141.  This position was filled by a female, Lauria Merritt.[11]  *Id*., at 142.  Merritt was principal at Paint Rock Valley High School immediately prior to accepting this job.  Plaintiff depo. at 143; plaintiff ex. 62, 64.  John Lyda heard Ms. Merritt had performance problems at Paint Rock, but was told by Harding that Ms. Merritt was whom the community and the Board member from that district wanted.  Lyda depo. at 45-46.

**Dutton Elementary School Principal** (February 2012):  The plaintiff applied for and interviewed for this position.  Plaintiff depo. at 146.  Craig Robbins was hired for that job.  *Id*., at 154.  One of the interview committee members for this position

---

[11]Ms. Merritt's highest certification is Class AA, but not in administration.  Plaintiff ex. 63; Harding depo. at 227. According to Harding, Scotty Overdear was the committee's second choice.  Harding II depo. at 12.

informed the plaintiff that Robbins was not who was recommended for the job and

that the committee process "was a joke."[12]  Plaintiff depo. at 154-156.  The plaintiff

held more years of experience and a higher degree than Robbins.  Plaintiff depo. at

156-157.  However, Robbins had prior experience as principal at Flat Rock and

Bridgeport Middle School, and held an AA certification.  Plaintiff ex. 66.

**Flat Rock Elementary Principal** (May 2012): Because Craig Robbins moved

to Dutton Elementary, this position became available.  Harding II depo. at 12.  The

plaintiff applied and interviewed with defendant Harding.  Plaintiff depo. at 160.

Scotty Overdear was hired for this position.[13]  Plaintiff depo. at 162; plaintiff ex. 44.

He had one year administrative experience as an assistant principal at Section.

Harding depo. II at 16.   John Lyda believed the committee tainted on this selection

because Harding picked an individual who in turn picked the other committee

members, and none of them had an interest in Flat Rock Elementary School.  Lyda

depo. at 47-48.

---

[12]Defendants supplied the affidavits of Joy Barnes, DeWade Fowler and Barry Pickett (defendants Exhibits 97, 98, and 99) in support of Harding's decision to recommend Craig Robbins for this position. They contradict plaintiff's testimony that the committee did not support Robbins' unanimously.  Oddly, the committee members do not seem to remember when they met.  Ms. Barnes describes the interviews as occurring in "2012," Mr. Fowler believes they were in "approximately April 2012," and Mr. Pickett recollects the same occurred in "the summer of 2012."

[13]The defendants provided the affidavits of Steve Buckner and Imogene Tidmore in support of the decision to hire Scotty Overdear as principal of Flat Rock Elementary (defendants' exhibits 104 and 105).  The court notes only two of the committee members provided affidavits concerning the committee reaching its decision.

**Section High School Assistant Principal** (May 2012):  The plaintiff applied for this position, which was created when Scotty Overdear was hired to be the principal at Flat Rock.  Roberts depo. at 45.  She was again interviewed by Gene Roberts.  Plaintiff depo. at 165; Roberts depo. at 46.  Michael Wilborn was hired.  Plaintiff depo. at 166.  The plaintiff believes she was more qualified because she had more years of experience and a higher degree that Wilborn.  Plaintiff depo. at 166-167.  Evidence reflects Mr. Wilborn held a Class A certification and taught science prior to being hired as the Section High School Assistant Principal.  Plaintiff ex. 77.  Roberts knew Wilborn was a coach and was looking for a basketball coach, although that was not part of the assistant principal job description.  Roberts depo. at 46-47; Harding II depo. at 39, 45.  Roberts was aware that plaintiff had coached junior high basketball too, but he chose Mr. Wilborn because he "needed a basketball coach and he had been coaching the girl's basketball for several years and he had – very good with it."  Roberts depo. at 47.   Additionally, he knew Mr. Wilborn had prior administrative duties, specifically, he did the attendance at North Sand Mountain.  *Id*., at 47-48.  Harding explained that Wilborn "probably did some assistant principal duties.  He probably had some time scheduled for that, but probably didn't receive any compensation."  Harding II depo. at 32.  He then agreed that Wright, and not Wilborn, was actually North Sand Mountain's assistant principal during the time in

question.   Harding II depo. at 33.   Roberts had no idea if plaintiff had prior administrative duties, and did not ask.  Roberts depo. at 48.

In the summers of 2010 and in 2011 the plaintiff met with defendant Harding and asked why she was not chosen for any of the jobs.  Plaintiff depo. at 110, 114. He told her that the ones he chose were more qualified than she was.  *Id*., at 110-111. She told him she thought it was because she was female and he said that was not why. Plaintiff depo. at 111, 119-120.   Harding also told her she needed to get recommended by a committee.  *Id*., at 115, 119-120.  However, the plaintiff was told by Sheila Cornelison, the AEA representative, that the committees recommended whomever Harding told them to.  Plaintiff depo. at 116.   Members of the Board of Education also believed the committee system was stacked to hire whomever the Superintendent wanted hired.  Moore depo. at 64.   The committee system has been discussed in Board meetings and several members of the board have expressed their dissatisfaction with it.  Gant depo. at 16.  Gant believes the system is a "farce," because the people picked for those committees are people favorable to the applicant that is wanted.  Gant depo. at 16-17.  Selection for a committee is based on who will recommend the "right" person.  Gant depo. at 47.  The Board also told Harding he should not tell potential applicants not to bother applying for a position, to which

Harding responded he would continue doing things the way he wanted.  Gant depo. at 18-19.

The plaintiff heard from Ms. Cornelison that Harding did not think any female would make a good principal and that Harding referred to her as a "bitch" in executive session.  Plaintiff depo. at 123.  Ms. Peek, secretary to Mr. Harding, also heard Harding refer to the plaintiff as a "bitch," but only in the context of the lawsuit.[14]  Peek depo., at 12-13, 40, 45.  Similarly, Dana Moore heard Mr. Harding refer to the plaintiff as a "bitch," but believes they were discussing plaintiff's lawsuit.  Moore depo. at 73.  Moore also states that there is a question, not just from Harding, as to whether women are strong enough to deal with physical discipline as administrators.  Moore depo. at 117-118.  The Board has also discussed that men are not compassionate enough.  Moore depo. at 119.  However, Moore has also told Harding that plaintiff would make a good administrator.  *Id*. at 118.

Cecil Gant stated that he heard Harding say "that no way in hell would he give Lynn Owens a job.  And maybe he called her a bitch.  I'm not sure about that."  Gant depo. at 14.  He believes this was a general statement and not in reference to a particular job, but is sure it was prior to the time she filed her EEOC charge.  Gant depo. at 14-15.  Gant personally believes the plaintiff's character is impeccable and

---

[14]Ms. Peek is Mark Guffey's sister.  Guffey depo. at 20.

that she would make a good administrator.  Gant depo. at 51.  Harding contends that the plaintiff lacks the demeanor and personality attributes for a principal or assistant principal.  Harding II depo. at 86-93, 101-102.

Ms. Cornelison has heard Mr. Harding state he does not want females in administration.[15]   Affidavit of Cornelison, submitted as plaintiff ex. 83, at ¶ 5. Harding referred to women as "too emotional and hardnosed" and added that "females don't have the personality and fortitude to be principals."  *Id.*  Harding has not promoted a single female into an administrative position since he became superintendent.  Harding II depo. at 124; Cornelison affidavit, ¶ 7.  Both Rhonda Wheeler and Lauria Merritt were already in principal or assistant principal roles prior to Mr. Harding's tenure beginning.  *Id*.  Harding is not aware of any female employees given assistant principal duties.  Harding II depo. at 64.  Ms. Merritt, Ms. Wheeler and Dr. Brooks are the only three female principals in the Jackson County School System.  Harding II depo. at 83.  There are no female assistant principals.  *Id*., at 83.  Jackson County has a total of seven assistant principal positions and 18 principal positions.  Harding depo. at 84.

Since filing her EEOC charge, the plaintiff thinks her supervisor, Ms. Wheeler, has discriminated against her by removing her from the school improvement team and

_____

[15]Harding states this a lie.  Harding depo. at 105.

from the committee which seeks solutions for at risk children.  Plaintiff depo. at 171-172.  Because of her removal from this team and committee, the plaintiff has no administrative experience beyond 2010.  *Id*., at 172.  At the same time, she was removed from the accreditation team.  *Id.*, at 174.

## II.  STANDARD FOR EVALUATING SUMMARY JUDGMENT

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).  Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Insurance.*, 232 F.3d 844, 848 (11th Cir.2000).

### III. Legal Analysis

A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to

find illegal discrimination.  *Wilson v. B/E Aerospace, Inc*,. 376 F.3d 1079, 1088 (11th

Cir. 2004), citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147-48,

120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

Plaintiff asserts that she did not receive various promotions due to gender

discrimination and retaliation for filing EEOC charges.  Considering the evidence in

the light most favorable to the plaintiff, and without judging credibility, genuine

issues of fact remain in this case.  The plaintiff's and defendants' evidentiary

submissions directly contradict each other.[16]  Evidence of direct discrimination is

present.  Although defendants argue that there is no such evidence (defendants' brief

at 8), Ms. Cornelius has provided a sworn statement that Harding called the plaintiff

a derogatory name and stated women made poor principals.  As stated above, several

of the Board of Education members also heard Mr. Harding make such comments.

While defendants challenge the credibility and weight to which such statements are

entitled, the court may make no such determinations at the summary judgment stage.

---

[16]Defendants' reply to plaintiff's response (doc. 44) confirms the level of factual dispute present before the court.  Defendants devote their entire 10 page response to disputing what the plaintiff asserts the evidence to show.  For example, defendants state that "Mr. Harding testified that the principals, not Mr. Harding, set up interviews and schedule appointments..." Defendant's reply, at 1.  However, the court has before it the deposition of Mark Guffey, in which Mr. Guffey states he was told by Mr. Harding both that he was creating a second assistant principal position at Pisgah, and that the position would be filled by Gene Roberts.

Circumstantial evidence also exists which creates genuine issues of fact.  For instance, the evidence reflects that 14 out of the 15 positions referenced were filled by men.[17]  Evidence is before the court that of the two positions which were filled by women, one was already in the assistant principal position before Harding became superintendent, and for the other one there is evidence that a state senator intervened and suggested to Harding that the particular female in question be hired. Additionally, the plaintiff has provided evidence that for most of the positions in question, she was either more qualified, had more experience, or both, than the candidate actually selected.  Of note, none of the affidavits provided by members of the various ad hoc committees even mention relative qualifications, such as education and experience, of most of the candidates.  Because evidence material to the case directly contradicts other evidence, genuine issues of material fact remain in this case, which are proper for consideration by a trier of fact.

The court next considers each of the defendants' specific arguments in turn.

---

[17]The defendants assert that 14 out of 16 positions were filled by men.  While the percentage difference is minimal, the court notes the difference arises from defendants' inclusion of the May 2010 Rosalie Elementary School principal position, which was filled by Rhonda Wheeler.  The court has not included this job as the plaintiff specifically stated she was not suing over this position.

A.  *Whether any positions at issue are barred as more than 180 days prior to plaintiff's July 2011 EEOC charge:*

The defendants assert that several of the positions raised by plaintiff were more than 180 days prior to plaintiff's first EEOC charge, and therefore barred under Title VII.  Defendants' brief at 6.  The defendants are correct, however the plaintiff has also brought these same claims pursuant to § 1983, which has no such prerequisite to suit.[18]  As such, the plaintiff may proceed with her claims concerning her lack of selection for the Skyline High School position, two assistant principal positions at Pisgah High School, and an assistant principal position at North Jackson High School.[19]

B.  *Lack of Prima Facie Evidence of Discrimination*

The defendants also argue that the evidence does not support a prima facie case of discrimination for the transportation supervisor, special education coordinator, Bridgeport Elementary Principal and Rosalie Elementary Principal.  Defendants'

---

[18]Unlike Title VII, the ADA, and the ADEA, 42 U.S.C. §§ 1983 does not include specific statutes of limitations periods. The proper limitations period for claims brought under § 1983 is the personal injury limitations period of the forum state. *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir.1996). In Alabama, that time is two years.  *See* Ala.Code § 6-2-38 (2004)*; Lufkin v. McCallum*, 956 F.2d 1104 (11th Cir.1992). Plaintiff filed her complaint on May 29, 2012, making all of her claims timely.

[19]The only other position which falls in this category is the principal position at Rosalie Elementary, which was filled by a woman and which plaintiff has specifically stated she is not including in claims for discrimination.

brief, at 13.  As noted previously, the plaintiff has stated she is not pursuing a claim for the Rosalie position.

As to the other three jobs, the court considers the "failure to promote" prima facie analysis, as adopted from the oft-repeated *McDonnell Douglas Corp. v. Green* methods of proof, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  In a "failure to promote case," the plaintiff meets her prima facie burden of proof by establishing that (1) she is a member of a protected class; (2) she was qualified for the position for which she applied; (3) she was rejected for the position; and (4) the position was filled with a person from outside the plaintiff's protected class.  *Vessels v. Atlanta Independent School System,* 408 F.3d 763, 768 (11th Cir.2005); citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The court notes the plaintiff meets this standard for every one of the positions in question except for the Bridgeport Elementary position, which was filled by a female, Lauria Merritt. [20]  Although the defendants assert plaintiff was not qualified for the Transportation Supervisor position, the plaintiff has provided evidence that she did meet the qualifications except for possession of a CDL.  She has further

---

[20]Although this position was filled by a female, the court notes the same post-dates plaintiff's EEOC charge and the plaintiff contends she was not selected for this position because of retaliation.

provided evidence that Mr. Kirby was allowed time to obtain a current CDL, while plaintiff was not, although she had previously held a CDL.  Likewise, with the Special Education Coordinator position, the plaintiff has provided evidence that she was as qualified as the male originally selected by Harding, and possibly the male selected the second time by Mr. Harding, after the Board refused to hire his first selection.  As set out in this opinion, the court also finds the evidence before it to be so full of factual inconsistencies, implausabilities and contradictions that the court cannot find any credence in the defendants' proffered legitimate. non-discriminatory reasons for its actions. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997).

### C.  Defendants' Non-Discriminatory Reasons

The defendants argue that the committee system is evidence of non-discriminatory reasons for the plaintiff's non-selection.  Defendants' brief at 16. However, the court has evidence before it that the committees selected individuals pre-determined by Harding.  Additionally, even if the court could find legitimate, non-discriminatory reasons for the defendants' repeated selections of men over the plaintiff, the same repeated selection of less qualified individuals rebuts any non-discriminatory basis.  The committees simply do not suffice as reasons that "might

motivate a reasonable employer." *See e.g., Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2001).

While defendants also assert Harding's decision to transfer Durham to Stevenson Elementary was within Harding's authority, and that there is no evidence the same was motivated by gender bias, the court finds the cumulative weight of the evidence, viewed in the light most favorable to the plaintiff, supports an inference that the same handful of males were shuffled between vacancies to the exclusion of qualified female applicants, such as the plaintiff. There is ample evidence from which a reasonable fact finder could conclude that the legitimate reasons given by the employer were not the true motivations, but a pretext for discrimination. *See Ash v. Tyson Foods, Inc.,* 664 F.3d 883, 892 (11th Cir.2011); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). See also *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir.2004); *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir.2001)*; citing Combs*, 106 F.3d at 1538.

### D. Retaliation

To survive a summary judgment motion for a claim of retaliation, the plaintiff must show that she (1) engaged in Title VII protected activity; (2) adverse employment actions occurred; and (3) causal connections between the protected activity and the adverse employment actions exist. *Brochu v. City of Riviera Beach,*

304 F.3d 1144, 1155 (11ᵗʰ Cir.2002); *Sullivan v. National Railroad Passenger Corp.*,

170 F.3d 1056, 1059 (11ᵗʰ Cir.1999).

The defendants argue that the plaintiff cannot prevail on her claims of retaliation because she cannot show that the decision-maker was aware of her protected activity.  Defendant's brief at 32.  However, to reach such a conclusion, the court necessarily has to find that the committees functioned independently of Harding, who most certainly was aware of plaintiff's protected activity.  As stated above, when considered in the light most favorable to the plaintiff, the evidence supports a finding that the committees were not unbiased or independent, but rather a means for Harding to have his selection for a position secured.[21]

Because the plaintiff filed her first charge July 5, 2011, she may proceed on her retaliation claims for positions filled after this date.[22]  The court has before it evidence that, after plaintiff filed her EEOC charge, she was called derogatory names by

---

[21]Harding even contradicts himself.  After informing the EEOC that the plaintiff was not promoted because she lacked "the demeanor and personality attributes necessary for the leadership responsibility of a principal or assistant principal," Harding continued to schedule her for interviews so he would not be accused of retaliation.  Harding II depo. at 103.  However, Harding also testified that if the plaintiff could have gotten a committee to recommend her, he would have put her in a principal or assistant principal position, in spite of her perceived lack of leadership skills.  Harding depo. at 102-104.

[22]Although the defendants' brief the Eleventh Circuit standards for the amount of time in which an adverse employment action can be "causally related" to a protected activity, in this case there is evidence that Harding stated to multiple individuals that he would "never" allow plaintiff to be promoted because she was a "bitch" for filing a lawsuit.

Harding, and further that Harding made references to her never getting a promotion.

D. *Evidence of Violation of Plaintiff's Equal Protection Rights*:

"When section 1983 is used as a parallel remedy for violation of ... Title VII, the elements of the two causes of action are the same." *Snider v. Jefferson State Community College*, 344 F.3d 1325, 1328 n. 4 (11th Cir.2003). The defendants argue that the plaintiff can show no proof of gender discrimination because of its use of the committee system. Defendants' brief at 37. However, as discussed multiple times above, the court has evidence before it that the committee system was tainted. Additionally, the fact that 14 out of 15 of the positions in question were filled by men lends support to evidence of a permanent, well-settled custom of gender discrimination. As stated above, the plaintiff sets forth a prima facie case of discrimination for each of the positions in question, which defendants' legitimate, non-discriminatory reasons fail to rebut.

E. *Whether Harding is Entitled to Qualified Immunity*

Defendants argue that even if plaintiff is entitled to proceed on her claims under § 1983, Harding is entitled to qualified immunity. Defendants' brief at 38. Qualified immunity protects government officials performing discretionary functions from liability in their individual capacity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have

29

known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666

(2002).  The Eleventh Circuit has specifically explained that

> [a] denial of qualified immunity at summary judgment necessarily
> involves two determinations: 1) that on the facts before the court, taken
> in the light most favorable to the plaintiff, a reasonable jury could find
> that the defendant engaged in certain conduct, and 2) that the conduct
> violated "clearly established law" such that a reasonable person in the
> defendant's position would have had notice that his actions were
> unlawful.

*Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir.1998) (citing *Johnson v. Clifton*,

74 F.3d 1087, 1091 (11th Cir.1996)). Here, if a reasonable jury believes the evidence

that Harding believed women make poor administrators, and therefore refused to

promote plaintiff into principal, assistant principal, or other administrative positions,

a jury could very reasonably find that Harding's behavior was clearly and obviously

in violation of existing federal law.  *See e.g., Williams v. Board of Regents of*

*University System of Georgia,* 477 F.3d 1282, 1300 (11th Cir.2007).  See also *Davis*

*v. Passman*, 442 U.S. 228, 235 (1979) ("The equal protection component of the Due

Process Clause thus confers on petitioner a federal constitutional right to be free from

gender discrimination."); *Snider v. Jefferson State Cmty College*, 344 F.3d 1325,

1331 (11th Cir.2003) (Since at least 1979 it has been established that the Equal

Protection Clause provides a constitutional right to be free from unlawful sex

discrimination in public employment.); *Cross v. Alabama*, 49 F.3d 1490, 1507 (11th Cir.1995) (there is a constitutional right to be free from unlawful sex discrimination);

Defendants also argue that the plaintiff cannot prove a discriminatory motive on the part of Harding.  Defendants' brief at 40.  To establish a violation of the Equal Protection Clause, a plaintiff must prove discriminatory motive or purpose. *Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 (5th Cir.1980); see also *Cross*, 49 F.3d at 1507–1508. The court in *Whiting* held that "such intent should be inferred in the same manner as [the Supreme Court] said it is inferred under [Title VII]." *Whiting,* 616 F.2d at 121; *Cross,* 49 F.3d at 1507–1508.  Thus, in cases in which a plaintiff asserts a claim under § 1983 as a parallel basis for relief for employment discrimination, along with a Title VII claim, the elements required to establish the § 1983 claim mirror those required for the Title VII claim. *Whiting*, 616 F.2d at 121; *Cross,* 49 F.3d at 1508; *Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n. 16 (11th Cir.1982) ("Although overt discrimination is rare in this day of sophisticated employers Stynchcombe virtually announces that he did not consider women for the seven Deputy Sheriff I positions. Thus Hardin's prima facie case of discriminatory treatment is established.").

Having considered the foregoing in relation to the facts of this case, the court finds the plaintiff has brought forth evidence of a discriminatory motive of the part

31

of Harding, as set forth in detail above.  The evidence presented is sufficient to allow plaintiff's § 1983 claims to proceed to a jury.

## CONCLUSION

The court having considered the foregoing, and finding that genuine issues of material fact exist, the defendants' motion for summary judgment shall be **DENIED** by separate Order.[23]  This case remains set for trial and pretrial conference.

**DONE** and **ORDERED** this the 25th  day of June, 2013.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE

---

[23]As stated herein, the court is of the opinion that the plaintiff's claims concerning the Principal position at Rosalie Elementary is barred.  Plaintiff concedes the same.  *See* plaintiff's response (doc. 41) at 26, n.12.  Similarly, the plaintiff concedes she cannot prevail on her sex discrimination claim concerning the principal position at Bridgeport Elementary, but asserts she was denied the position in retaliation for her EEOC charge.